(14)

## POSTED ON WEB SITE

FILED

APR 2 5 2005

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 04-29060-B-7 |
| MICHAEL T. CAREY and LEONE R. CAREY, | Adversary No. 04-2548 |
| | DCN: IRS-1 |
| Debtors. | |
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Date: April 13, 2005 |
| v. | Time: 9:00 a.m. |
| | Department B |
| MICHAEL T. CAREY and LEONE R. CAREY, | |
| Defendants. | |

### MEMORANDUM DECISION

### I.   INTRODUCTION

The plaintiff United States of America, on behalf of its agency, the Internal Revenue Service (the "IRS"), moves for partial summary judgment on the grounds that findings in prior decisions entered by the United States Tax Court[1] (the "Tax Court") should be given issue preclusive effect in this adversary proceeding under the doctrine of collateral estoppel.  The IRS argues these findings, together with other undisputed facts, establish all of the elements necessary to find the tax liabilities of Michael T.

---

[1] The three Tax Court decisions are reported at: <u>Residential Mgmt. Services Trust v. Commissioner</u>, 82 T.C.M. (CCH) 874 (2001); <u>Carey v. Commissioner</u>, 84 T.C.M. (CCH) 214 (2002); <u>Carey v. Commissioner</u>, 86 T.C.M. (CCH) 420 (2003).

45

1  Carey and Leone R. Carey (the "Careys"), the debtors and defendants
2  in this action, non-dischargeable under 11 U.S.C. § 523(a)(1)(C).
3  The motion further contends that the taxes for certain specified
4  years are also non-dischargeable under 11 U.S.C. § 523(a)(1)(A).

5      The Careys did not file opposition to the IRS's motion.
6  Instead, they filed their own motion for summary judgment, which
7  was heard at the same time as the IRS's motion.  In their motion,
8  the Careys allege that the IRS has failed to provide sufficient
9  proof of the tax debt in question.

10     The court has jurisdiction in this matter under 28 U.S.C.
11 section 1334(b).  It is a core proceeding under 28 U.S.C. sections
12 157(b)(2)(I) and (J), in which the court may make its own findings
13 of fact and conclusions of law.  This decision constitutes the
14 court's findings of fact and conclusions of law under Federal Rule
15 of Civil Procedure 52, as incorporated by Federal Rule of
16 Bankruptcy Procedure 7052.

17                        **II.   BACKGROUND**

18     The Careys operate several residential care facilities in the
19 Redding, California area.  During the time period from 1995 to
20 1997, the Careys created at least four trusts and transferred these
21 facilities into the trusts.  Despite creation of these trusts and
22 the purported transfers, Michael Carey continued to operate and
23 manage the facilities and signed the tax returns for the trusts.

24     The tax liabilities at issue stem from the tax years 1995
25 through 2000, inclusive.  The IRS audited the returns for the years
26 at issue and determined that the Careys had substantially
27 underreported their income in each of those years.  The IRS further
28 determined that the various trusts were shams designed for tax

avoidance purposes.   According to the IRS, the income and expenses
of the trusts were attributable to the Careys individually, as well
as the resulting tax liability.

In March 1999, the IRS sent a notice of deficiency for the
1995 taxable year to the Careys and one trust, each of which
petitioned to the Tax Court.   These petitions were consolidated and
resulted in the 2001 decision referenced in footnote 1 above, which
sustained the IRS's determination that the Careys had underreported
their income.

In June 2000, the IRS issued a notice of deficiency for the
1996 taxable year.   Although the Careys did not petition the notice
of deficiency, they petitioned the Tax Court in a collection due
process proceeding.   The Tax Court in the 2002 decision, referenced
in footnote 1, held that the Careys deliberately refused to accept
delivery of the notices of deficiency and that they failed to show
that the IRS's determination of underreported income was in error.

In September 2001, the IRS sent a notice of deficiency for the
1997 taxable year.   Following a petition by the Careys, the Tax
Court in its 2003 decision, cited in footnote 1, determined that
they had underreported their income.

In 2003, the IRS sent a notice of deficiency to the Careys for
the tax years 1998 through 2000, determining that they had
underreported their income for each of those years.   The Careys did
not petition this notice of deficiency and the assessments of tax,
penalty and interest occurred in due course.

The Careys filed their chapter 7 case on September 7, 2004,
listing the IRS as a creditor.   This adversary proceeding by the
IRS ensued.   It seeks both a determination that the Careys' income

- 3 -

1  taxes for the years 1995 to 2000, totaling more than $6.4 million
2  without accruals, are non-dischargeable and a denial of the Careys'
3  discharge pursuant to 11 U.S.C. § 727.   The IRS's motion addresses
4  only the dischargeability causes of action.

5                         III.   DISCUSSION

6                    A.   SUMMARY JUDGMENT STANDARDS

7          Summary judgment may be granted only where there is no
8  genuine issue of fact and the moving party is entitled to judgment
9  as a matter of law.   Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett,
10 477 U.S. 317, 322-23 (1986).   "By its very terms, this standard
11 provides that the mere existence of some alleged factual dispute
12 between the parties will not defeat an otherwise properly supported
13 motion for summary judgment; the requirement is that there be no
14 genuine issue of material fact."   Anderson v. Liberty Lobby, Inc.,
15 477 U.S. 242, 248 (1986).

16                    B.   BANKRUPTCY CODE SECTION 523(a)(1)(C)

17 1.   Collateral Estoppel

18     The IRS partially relies on findings by the Tax Court, in
19 three published opinions, to establish that the Careys' income tax
20 liability for the years 1995 through 1997, inclusive, is non-
21 dischargeable under Bankruptcy Code section 523(a)(1)(C).   Among
22 other findings, the Tax Court concluded that the Careys had
23 established sham trusts in order to conceal income.   According to
24 the IRS, the doctrine of collateral estoppel prevents the Debtors
25 from relitigating issues regarding their personal tax liability and
26 their use of the sham trusts.

27         The doctrine of collateral estoppel applies in bankruptcy
28 dischargeability proceedings.   Grogan v. Garner, 498 U.S. 279, 285,

                              - 4 -

n. 11 (1991).  Where, as here, the prior proceedings were in
federal court, federal law determines when the doctrine of
collateral estoppel precludes relitigation of certain issues.
First Pacific Bancorp, Inc. V. Helfer, 224 F.3d 1117, 1128 (9th Cir.
2000), citing Sullivan v. First Affiliated Sec., Inc., 813 F.2d
1368, 1376 (9th Cir. 1987).

Under the doctrine of collateral estoppel, if a party has had
a full and fair opportunity to litigate an issue in a prior action,
they are collaterally estopped from relitigating that issue in a
subsequent action.  Parklane Hosiery Co. v. Shore, 439 U.S. 322,
332-33 (1979).  The doctrine is intended to limit the number of
times a defendant may be forced to litigate the same claim or
issue, and to promote efficiency in the judicial system by putting
an end to litigation.  Peck v. Commissioner, 904 F.2d 525, 527 (9th
Cir. 1990); United States v. ITT Rayonier, Inc., 637 F.2d 996, 1000
(9th Cir. 1980).

To foreclose relitigation of an issue under collateral
estoppel: "(1) the issue at stake must be identical to the one
alleged in the prior litigation; (2) the issue must have been
actually litigated [by the party against whom preclusion is
asserted] in the prior litigation; and (3) the determination of the
issue in the prior litigation must have been a critical and
necessary part of the judgment in the earlier action." McQuillon
v. Schwarzenegger, 369 F.3d 1091, 1096 (9th Cir. 2004); Trevino v.
Gates, 99 F.3d 911, 923 (9th Cir. 1996); Town of N. Bonneville v.
Callaway, 10 F.3d 1505, 1508 (9th Cir. 1993); Clark v. Bear Stearns
& Co., Inc., 966 F.2d 1318, 1320 (9th Cir. 1992); Greenblatt v.
Drexel Burnham Lambert, Inc., 763 F.2d 1352, 1360 (11th Cir.

1   1985)(alteration in <u>Callaway</u>).

2       Each of the three Tax Court decisions satisfies the final

3   element, namely, the factual findings of the Tax Court were

4   critical to the judgment in each of the prior actions.  The more

5   pivotal question is whether the issues the Tax Court considered are

6   identical to the issues this court must consider in the

7   dischargeability context.  Also, this court will need to examine

8   whether the issue was actually litigated for purposes of collateral

9   estoppel.

10      -  *Actual litigation*

11      The Careys actively participated in the proceedings that led

12  to the 2001 and 2002 decisions by the Tax Court.  The 2003

13  decision, however, raises a question whether there was "actual

14  litigation" even if the issues were identical.  The Ninth Circuit

15  Court of Appeals in <u>In re Palmer (IRS v. Palmer)</u>, 207 F.3d 566, 568

16  (9th Cir. 2000), found that a Tax Court decision was not entitled

17  to collateral estoppel effect because it was the equivalent of a

18  default judgment.  There, the taxpayer filed the petition, but did

19  nothing more.  He ignored requests for admission, participated in

20  no discovery, and failed to respond to the IRS's motion for summary

21  judgment.  The Ninth Circuit found that the taxpayer gave up at the

22  outset and did not engage in any "obstructive tactics that might

23  result in collateral estoppel."   <u>Ibid.</u>

24      The 2003 decision against the Careys was reached following the

25  IRS's motion for summary judgment.  That motion was premised on

26  deemed admissions following the Careys' failure to respond to the

27  IRS's request for admissions.   Following a motion to dismiss by

28  the IRS, the Court ordered the Careys to file an amended petition

- 6 -

1 and set the matter for trial.  The Careys did not timely file an
2 amended petition, but the Court extended them another opportunity
3 to do so.   It warned them that, if they filed an amended petition
4 with the same "frivolous arguments," those contentions would be
5 stricken.   Thereafter, the Tax Court struck the frivolous
6 contentions from the original petition and amended petition.
7 Despite orders to do so, the Careys did not respond to the IRS's
8 motion for summary judgment.

9      The litigation over the 1997 taxes resembles Palmer in that
10 the Careys did not appropriately respond to the Tax Court's various
11 orders.   This court concludes, however, that the 2003 decision was
12 not the result of a default.   Rather, the Careys participated in
13 the litigation but chose instead to ignore the Tax Court's orders.
14 Therefore, to the extent the issues are otherwise the same, they
15 were actually litigated in all three proceedings before the Tax
16 Court.

17      -   Identity of Issues

18      The IRS does not seek to use the preclusive effect of
19 collateral estoppel to determine the fraud issues before this
20 court.   The parties admittedly did not litigate the issue of fraud
21 or fraudulent returns in any of the Tax Court proceedings.
22 However, the IRS relies on the findings made by the Tax Court to
23 partially establish its contention that the tax debt in question is
24 non-dischargeable.

25      As discussed above, each of the underlying findings made by
26 the Tax Court is entitled to a preclusive effect because the Tax
27 Court decisions are final, the parties and the issues are the same,
28 and the underlying issues were actually and necessarily litigated.

- 7 -

2. <u>Applicable Law</u>

Section 523(a)(1)(C) provides that taxes are non-dischargeable to the extent that "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The plaintiff must prove its case by a preponderance of the evidence.  <u>Grogan</u>, 498 U.S. at 286-87.  The first basis for non-dischargeability focuses on the tax return itself whereas the second concerns the taxpayer/debtor's attempts to evade or defeat the tax.

In order to establish fraud for purposes of section 523(a)(1)(C), the government must establish a statutory civil fraud violation under Internal Revenue Code section 6653(b) [now section 6663].  <u>McKay v. United States</u>, 957 F.2d 689, 691 (9th Cir. 1992). The plaintiff must prove non-dischargeability by a preponderance of the evidence, as opposed to the clear and convincing standard applied in Tax Court.  <u>United States v. Graham</u>, 973 F.2d 1089, 1102 (3rd Cir. 1992), <u>citing</u> <u>Grogan</u>, 498 U.S. at 287-88.  Although the IRS did not seek fraud penalties in the Tax Court or in the notices of deficiency, it is not precluded from asserting that returns were fraudulent for dischargeability purposes.  <u>See</u> <u>Levinson v. United States</u>, 969 F.2d 260, 262-63 (7th Cir. 1992).

Civil fraud requires a showing that the taxpayer intended to evade a tax known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of the tax. <u>See</u> <u>Webb v. Commissioner</u>, 394 F.2d 366 (5th Cir. 1968); <u>Stoltfus v. United States</u>, 398 F.2d 1002 (3rd Cir. 1968), <u>citing</u> <u>Powell v. Granquist</u>, 252 F.2d 56, 60 (9th Cir. 1958).  Because a taxpayer would normally not admit to tax evasion, the fraudulent intent is

- 8 -

generally proven by circumstantial evidence.  It can be inferred by "any conduct, the likely effect of which would be to mislead or conceal."  United States v. Walton, 909 F.2d 915, 926 (6th Cir. 1990), quoting Spies v. United States, 317 U.S. 492, 499 (1943).

Courts traditionally infer intent from certain "badges of fraud," specified below.  Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984).  These include: 1) understatements of income made repeatedly; 2) failure to file tax returns; 3) implausible or inconsistent behavior by the taxpayer; 4) failure to cooperate with the federal tax authorities; 5) failure to keep adequate books and records; and 6) concealing assets.  Bradford v. Commissioner, 796 F.2d 303, 307-08 (9th Cir. 1986)(citations omitted).

3.  Undisputed Facts Established for Summary Judgment Purposes

The Tax Court findings include the Careys' use of sham trusts, their repeated underreporting of income, their unsubstantiated expenses, and their deliberate refusal of delivery of notices of deficiency.

In its 2001 decision (with respect to the 1995 taxes), the Tax Court made the following relevant findings.  Michael Carey operated the residential care facilities, had control over the trust's accounts and operations, and prepared the trust's tax return.  The trust had underreported gross receipts and interest income.  The trust was a sham and its income should have been included in the Careys' individual returns.  The Tax Court concluded that the Careys underreported their income on their 1995 return by over $168,000 and failed to substantiate over $345,000 in expenses claimed on that return.

In its 2002 decision (with respect to the 1996 taxes), the Tax

- 9 -

Court found that Michael Carey had sole signatory authority over four trusts' bank accounts.  It further found that the Careys deliberately refused delivery of the notices of deficiency.  Finally, the Tax Court found that IRS's assessment of the 1996 taxes was proper.

The 2003 decision (with respect to the 1997 taxes) makes more complete findings with respect to the Careys' use of the sham trusts.  These include the fact that the Careys had complete control over the trusts and used the funds in the trusts to pay substantial personal expenses.  Further, the Careys received but did not report over $1.2 million in self-employment income and could not substantiate the deductions claimed on their 1997 income tax return.  The Tax Court awarded a $5,000 penalty based on its conclusion that the Careys' claims in Tax Court were frivolous, groundless and instituted for purposes of delay.

The record before the court also demonstrates that the Careys received a notice of deficiency in 2003 for the taxable years 1998, 1999, and 2000.  During these years, the Careys continued to use the trusts to report income from the operation of their residential care facilities.  The IRS determined that the Careys had underreported their income by over $404,000 in 1998, by over $2.7 million in 1999, and by over $3 million in 2000.  The Careys did not file a petition from this notice of deficiency.  Assessments of these taxes occurred in due course.

In response to this evidentiary record (and in support of their own motion for summary judgment), the Careys filed affidavits with this court.  In particular, the Careys each testified that they have not received Forms 23C and 4340 to establish assessment

dates or certification of liability to the IRS.  Even if true,
these allegations are not material facts that affect the outcome of
this dischargeability action.  Further, the record contains copies
of the completed Forms 4340.  The presumption is that the
assessments were made and the required notices properly issued.
<u>Jones v. United States</u>, 60 F.3d 584, 590 (9th Cir. 1995).  The
Careys' affidavits, without more, are insufficient to rebut this
presumption.  <u>United States v. Chila</u>, 871 F.2d 1015, 1018 (11th
Cir. 1989), <u>cert. denied</u>, 493 U.S. 975 (1989).

The court finds that each of the undisputed facts set forth in
the IRS's compilation filed on March 10, 2005, in support of its
motion has not been contested.  The question then is whether those
facts taken as a whole are sufficient to establish by inference the
Careys' fraud for purposes of section 523(a)(1)(C) for the tax
years in question.  To resolve this issue, the court will analyze
the so-called "badges of fraud."

4.  <u>Analysis of the Badges of Fraud</u>

- *Understatements of income*

The undisputed facts demonstrate that the Debtors have
substantially understated their income during the period in
question.  The unreported income is as follows:

| | |
|---|---|
| 1995 | $   168,438.00 |
| 1996 | $   649,509.00 |
| 1997 | $ 1,222,548.00 |
| 1998 | $   404,416.00 |
| 1999 | $ 2,705,255.00 |
| 2000 | $ 3,009,791.00 |

In each year, the underreporting was the result of the Careys' use
of sham trusts to avoid personal tax liability.

/

*- Failure to file returns*

The Careys filed timely returns in every year except 1997. However, due to the inaccuracy of those returns, this factor does not militate in their favor.

*- Implausible or inconsistent behavior*

Michael Carey attempted to convince the Tax Court that he and his wife had given away all their property and income earning capacity and not retained control over those assets and income. The Tax Court determined that this was a tax avoidance ploy and not reflective of the true facts.

*- Failure to cooperate with federal authorities*

The record is clear that the Careys did not cooperate with the IRS and abused the Tax Court proceedings.  The Tax Court concluded that the Careys deliberately evaded service of the notices of deficiency for the 1996 taxes and that the Careys filed frivolous pleadings in the 1997 taxes case for delaying purposes.  The IRS has also had to enforce summonses and defend against motions to quash those summonses.

*- Failure to keep adequate books and records*

The Careys failed to keep adequate records of income and expenses.   They lacked records to substantiate their expenses and also conceded underreported income.

*- Concealing assets*

The Careys' use of the sham trusts was designed to hide income and avoid personal tax liability.  In fact, the Tax Court determined that they retained complete control over the assets and income in question.

The undisputed evidence before this court is overwhelming that

- 12 -

the Careys filed fraudulent returns for the years 1995 through
2000.  Accordingly, the taxes and interest for those years are non-
dischargeable under 11 U.S.C. § 523(a)(1)(C).

The Careys' conduct also satisfies the requirements for a
wilful tax evasion, also non-dischargeable under section
523(a)(1)(C).  Here, the Careys persisted in their use of sham
trusts throughout the period in question.  The sole purpose of
these trusts was tax evasion, thereby rendering the subject taxes
non-dischargeable.

### C.   BANKRUPTCY CODE SECTION 523(a)(1)(A)

The tax liabilities for 1997 and 2000 are excepted from
discharge even without the showing of fraud under section
523(a)(1)(C).  The taxes for both years are priority obligations
under Bankruptcy Code section 507(a)(8) and, therefore, not
dischargeable under section 523(a)(1)(A).

### D.   PENALTIES AND LIENS

Penalties are generally excepted from discharge if they relate
to non-dischargeable taxes and were incurred within three years of
the petition date.  McKay, 957 F.2d at 693; 11 U.S.C. § 523(a)(7).
Only the penalties assessed against the 2002 taxes qualify as
within three years of the petition date.  However, with the
exception of the penalties on the 1997 taxes, all the tax
liabilities, including penalties, are secured by tax liens against
the Careys' assets.  Even discharged tax obligations remain secured
by those liens.  See In re Isom, 901 F.2d 744, 745 (9th Cir. 1990).

### IV.   CONCLUSION

As discussed above, the IRS is entitled to summary judgment
for the relief sought in the fourth cause of action of the

- 13 -

complaint [11 U.S.C. section 523(a)(1)(C)], the fifth cause of
action [11 U.S.C. section 523(a)(1)(A)], and the sixth cause of
action [tax liens].  By separate order, the court will grant the
IRS's request for partial summary judgment.

   The Careys' motion is more in the nature of a response and
does not properly address summary judgment elements in their favor.
The court will deny that motion by separate order.

   These motions do not address the IRS's remaining claims for
denial of discharge.  At this time the court will not enter
judgment pursuant to Federal Rule of Civil Procedure 54(b), made
applicable to this proceeding by Federal Rule of Bankruptcy
Procedure 7054.

Dated:  April 25, 2005

JANE DICKSON McKEAG
United States Bankruptcy Judge